UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, et al.,<br><br>        Defendants. | Case No. 15-cv-05872-EDL<br><br>**ORDER FOLLOWING IN CAMERA REVIEW** |

Before the Court is Plaintiff Sierra Club, Inc.'s ("Plaintiff") motion for summary judgment and Defendants National Marine Fisheries Service ("NMFS") and U.S. Fish and Wildlife Service's ("FWS") (collectively, "Defendants") cross-motion for summary judgment. Plaintiff seeks disclosure of documents pursuant to the Freedom of Information Act ("FOIA"). Following a hearing on June 6, 2017, the Court ordered Defendants to lodge sixteen documents with the Court for *in camera* review.[1] For the reasons discussed below, the Court finds that four are protected by the deliberative process privilege in their entirety; one is partially protected and must be redacted and produced; and eleven are not protected and must be produced in their entirety.

**I.   FACTUAL BACKGROUND**

Industrial cooling water intake structures have the potential to kill or harm fish and other organisms by impinging them on intake screens and entraining eggs and larvae through the plants' heat exchangers. Final Regulations To Establish Requirements for Cooling Water Intake

---

[1] These documents were: NMFS 0.7.266.44516.1, FWS 252, FWS 279, FWS 308, FWS 555, NMFS 0.7.266.5427.1, NMFS 0.7.266.5597.1, NMFS 0.7.266.7544.2, NMFS 0.7.266.37667, NMFS 0.7.266.37695, NMFS 0.7.266.61721, NMFS 0.7.266.14973.1, NMFS 0.7.266.7544.3, NMFS 0.7.266.44616.1, NMFS 0.7.266.45263.1, NMFS 0.7.266.45277.2

Structures at Existing Facilities and Amend Requirements at Phase I Facilities, 79 Fed. Reg. 48,300, 48,303 (Aug. 15, 2014) (to be codified at 40 C.F.R. pt. 122). Accordingly, Section 316(b) of the Clean Water Act requires the Environmental Protection Agency ("EPA") to regulate the withdrawal of water from U.S. waters through these structures in order to minimize the structures' adverse environmental impact. 33 U.S.C. § 1326(b).

On April 20, 2011, the EPA proposed new Section 316(b) regulations intended to apply to more than one thousand existing power plants and manufacturing facilities. Cooling Water Intake Structures at Existing Facilities and Phase I Facilities, 76 Fed. Reg. 22,174 (Apr. 20, 2011) (to be codified at 40 C.F.R. pt. 122). In order to fulfill its obligations under Section 7 of the Endangered Species Act ("ESA"),[2] the EPA commenced informal consultation with Defendants in 2012 and formal consultation in 2013. Following several extensions (related in part to the October 2013 government shutdown), Defendants and the EPA agreed that Defendants would provide a draft biological opinion to the EPA by December 6, 2013 and the final biological opinion by December 20, 2013. Super Decl., Ex. 6 at 3.

On December 3, 2013, Defendants informed the EPA that: (i) they still expected to complete the draft biological opinions by December 6, 2013; (ii) the opinions would be "jeopardy opinions"; and (iii) Defendants planned to include the draft biological opinions and related information in their administrative records, which document the agency's decisionmaking process and basis for the agency's decision. Super Decl., Ex. 7. NMFS completed its draft biological opinion on December 6, 2013, and FWS completed its draft biological opinion on December 9, 2013 (together, the "December 2013 Biological Opinions"). See Dkt. 47 at n.4. However, Defendants did not transmit either biological opinion to the EPA in December 2013. Instead, on

---

[2] This Section requires federal agencies to consult with Defendants in order to ensure that their actions are "not likely to jeopardize the continued existence" or "result in the destruction or adverse modification of habitat" of threatened or endangered species. 16 U.S.C. § 1536(a)(2). Following formal consultation, Defendants must prepare a written biological opinion containing Defendants' conclusion of either "jeopardy" (i.e., the finding that the agency action is likely to jeopardize the continued existence of a protected species or habitat) or "no jeopardy" (i.e., the finding that the agency action is not likely to jeopardize the continued existence of a protected species or habitat). If Defendants issue a jeopardy opinion, they must propose reasonable and prudent alternatives ("RPAs") that the agency can implement to avoid jeopardizing the species' continued existence. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(g)(8), (h)(3).

1  December 17, 2013, Defendants emailed the RPAs to the EPA, Super Decl. ¶ 13, Ex. 9, and
2  provided other "portion[s] of the [draft] biological opinion[s]" to the EPA thereafter.  Super Decl.
3  ¶¶ 14, 31, Ex. 21.
4       On May 19, 2014, following extensive discussions with the EPA, Defendants issued a joint
5  final biological opinion.  Super Decl., Ex. 10.  Unlike the December 2013 Biological Opinions,
6  this opinion was a "no jeopardy" opinion that concluded that the EPA's Section 316(b) regulations
7  were not likely to jeopardize the continued existence of listed species or destroy or adversely
8  modify their designated critical habitat.  The EPA issued its final regulations on May 19, 2014 and
9  published them in the Federal Register on August 15, 2014.  79 Fed. Reg. at 48,300.
10       Shortly after the EPA published its final regulations, various environmental groups,
11  including Plaintiff, filed petitions for review in six different circuits pursuant to 33 U.S.C. §
12  1369(b)(1), challenging the EPA's "no jeopardy" biological opinion.  Super Decl. ¶ 17.  These
13  petitions for review were eventually consolidated in the Second Circuit as <u>Cooling Water Intake</u>
14  <u>Structure Coalition, et al. v. U.S. EPA, et al.</u>, No. 14-4645(L).  Super Decl. ¶ 16.  On August 11,
15  2014, Plaintiff requested documents relating to the ESA Section 7 consultation from Defendants.
16  Super Decl., Exs. 1, 2.  NMFS produced responsive documents over the course of several months,
17  but withheld 2,916 documents in full and 1,536 documents in part on the basis of deliberative
18  process, attorney-client, and work product privilege.  Super Decl., Ex. 17.  Similarly, FWS
19  produced responsive documents over the course of several months, but withheld 1,075 documents
20  in full and 347 documents in part on the basis of deliberative process, attorney-client, and work
21  product privilege.  Super Decl., Ex. 19.

## II. PROCEDURAL HISTORY

23       Plaintiff initiated this action against NMFS on December 21, 2015, alleging that NMFS
24  improperly withheld responsive documents on the basis of the deliberative process privilege.
25  Plaintiff amended its complaint to add FWS as a defendant on March 22, 2016.  Plaintiff filed a
26  motion for summary judgment on December 1, 2016, asking the Court to order Defendants to
27  produce twenty-seven documents related to the ESA Section 7 consultation.  Defendants filed
28  their opposition and cross-motion on February 13, 2017, arguing that each of the requested

3

1  documents was protected by the deliberative process privilege.  Plaintiff filed its opposition and
2  reply on March 31, 2017, by which point twenty-five documents were in dispute.  Defendants
3  filed their reply on May 5, 2017.
4        The hearing took place on June 6, 2017.  During the hearing, the Court ordered Defendants
5  to lodge six documents -- the December 2013 Biological Opinions and four independent RPAs --
6  for *in camera* review.  It also ordered the Parties to meet and confer and submit a joint statement
7  regarding the documents that remained in dispute.  On June 13, 2017, the Parties provided a joint
8  statement listing the ten documents still in dispute and requesting permission to lodge these ten
9  documents for *in camera* review.  On June 23, 2017, the Court granted the Parties' request, and
10 Defendants thereafter lodged these documents with the Court.

## III.  LEGAL STANDARD

12       FOIA provides the public with the right to access records from federal agencies.  Upon
13 receipt of a FOIA request, a federal agency must disclose the requested records unless they fall
14 within one of nine exemptions.  5 U.S.C. § 552(b)(1)-(9).  The agency bears the burden of proving
15 that a requested record is exempt from disclosure.  Id. § 552(a)(4)(B).  Federal courts have
16 jurisdiction to order a federal agency to disclose improperly withheld documents or to review
17 documents *in camera* to determine if a claimed FOIA exemption applies.  5 U.S.C. § 552(a)(4)(B);
18 Maricopa Audubon Soc'y v. U.S. Forest Serv., 108 F.3d 1089, 1093 n.2 (9th Cir. 1997).

19       The fifth FOIA exemption, which permits nondisclosure of "inter-agency or intra-agency
20 memorandums or letters that would not be available by law to a party other than an agency in
21 litigation with the agency," 5 U.S.C. § 552(b)(5), encompasses the deliberative process privilege.
22 This privilege protects "documents reflecting advisory opinions, recommendations and
23 deliberations comprising part of a process by which governmental decisions and policies are
24 formulated."  Carter v. U.S. Dep't of Commerce, 307 F.3d 1084, 1089 (9th Cir. 2002) (quoting
25 Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).

26       The deliberative process privilege applies to documents that are both (i) pre-decisional and
27 (ii) deliberative.  A document is pre-decisional if it is "prepared in order to assist an agency
28 decisionmaker in arriving at his decision, and . . . reflect[s] the personal opinions of the writer

United States District Court
Northern District of California

4

rather than the policy of the agency." Carter, 307 F.3d at 1089. A record is deliberative if it contains "recommendations, draft documents, proposals, suggestions and other subjective documents that reflect the personal opinions of the writer rather than the policy of the agency." Nat'l Wildlife Fed'n v. United States Forest Serv., 861 F.2d 1114, 1118-19 (9th Cir.1988). The key question is "whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Assembly of State of Cal. v. U.S. Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992).

"[C]ommunications containing purely factual material are not typically within the purview of Exemption 5." Julian v. U.S. Dep't of Justice, 806 F.2d 1411, 1419 (9th Cir. 1986), aff'd 486 U.S. 1 (1988). Generally, factual information is not covered by the privilege because the release of such information does not expose the deliberations or opinions of agency personnel. See Mink, 410 U.S. at 91 (refusing to extend Exemption 5 to "factual material otherwise available on discovery merely [because] it was placed in a memorandum with matters of law, policy, or opinion"). "The factual/deliberative distinction . . . [is] a useful rule-of-thumb favoring disclosure of factual documents, or the factual portions of deliberative documents where such separation is feasible." Assembly, 968 F.2d at 921. However, "even if the content of a document is factual, if disclosure of the document would expose the decision-making process itself to public scrutiny by revealing the agency's evaluation and analysis of the multitudinous facts, the document would nonetheless be exempt from disclosure." Nat'l Wildlife Fed'n, 861 F.2d at 1119.

Several cases have considered whether documents related to ESA Section 7 consultations fall within the deliberative process exemption. See Desert Survivors v. US Dep't of the Interior, No. 16-CV-01165-JCS, 2017 WL 475281 (N.D. Cal. Feb. 6, 2017); Our Children's Earth Foundation v. National Marine Fisheries Service, No. 14–4365 SC, 14–1130 SC, 2015 WL 4452136 (N.D. Cal. July 20, 2015); Nw. Envtl. Advocates v. U.S. E.P.A., No. CIV 05-1876-HA, 2009 WL 349732, at *7 (D. Or. Feb. 11, 2009); Greenpeace v. Nat'l Marine Fisheries Serv., 198 F.R.D. 540 (W.D. Wash. 2000). These cases consistently require production of ESA Section 7 documents that are "relatively polished drafts." Nw. Envtl. Advocates, 2009 WL 349732, at *7;

see also id. (drafts that "lay out the law applicable to the decisions at hand, discuss the relevant science, and apply the law to that science" not protected); Desert Survivors, 2017 WL 475281 at *14 ("preliminary drafts" not protected because disclosure would not have chilling effect on agencies); Greenpeace, 198 F.R.D. at 543. ("[I]nformation that does not disclose the deliberative process, communications unrelated to the formulation of law or policy, and routine reports are not shielded by the privilege.").

However, "documents express[ing] preliminary staff views or tentative opinions" are protected from disclosure. Nw. Envtl. Advocates, 2009 WL 349732, at *8; see id. at *7 (documents reflecting "internal discussions" and "back-and-forth/give-and-take" are protected); Desert Survivors, 2017 WL 475281 at *14 (because disclosure of preliminary staff views or tentative opinions "might chill speech," documents expressing them are protected); Our Children's Earth Foundation, 2015 WL 4452136 at *5 (drafts that "reflect the *interpretations* of that scientific information by staff and scientists, thus reflecting their personal opinions on the science" are protected).

## III. DISCUSSION

### A. Documents Lodged on June 13, 2017

As discussed in more detail below, of the six documents that Defendants lodged for *in camera* review on June 13, 2017, the Court finds that one is protected and five are not protected and must be disclosed.

#### 1. December 6, 2013 Draft Biological Opinion (NMFS 0.7.266.44516.1): **Not Protected**

This document is a 289-page draft jeopardy biological opinion that describes the EPA's proposed changes to Section 316(b) of the Clean Water Act, the new requirements for owner/operators of industrial cooling water intake structures, and the location of affected structures. It also evaluates the direct and indirect effects that the EPA's proposed action would have on ESA-listed species and their habitats. The document is a "relatively polished draft." Nw. Envtl. Advocates, 2009 WL 349732, at *7. It contains only two comments in the margins, neither of which reveals the decisionmaking process of NMFS personnel. See Assembly of State of Cal.,

968 F.2d at 920 ("A predecisional document is a part of the 'deliberative process,' if the disclosure of [the] materials would expose an agency's decisionmaking process."). Accordingly, it is not exempt from disclosure under the deliberative process privilege. See Greenpeace, 198 F.R.D. at 543 ("[I]nformation that does not disclose the deliberative process…[is] not shielded by the privilege.").

### 2. December 9, 2013 Draft Biological Opinion (FWS 252): Not Protected

This document is a 72-page draft jeopardy biological opinion that is similar to the NMFS December 6, 2013 draft Biological Opinion, but it omits several sections. The document **is** a "relatively polished draft." Nw. Envtl Advocates, 2009 WL 349732, at *7. It contains no subjective comments, recommendations, or opinions,. Accordingly, it is not exempt from disclosure under the deliberative process privilege. See Greenpeace, 198 F.R.D. at 543.

### 3. December 17, 2013 RPAs (NMFS 0.7.266.44616.1): Protected

This document is a 4-page RPA that describes a course of action by which the EPA could avoid adversely affecting protected species and habitats. It includes multiple comments, modifications, and additions of language by NMFS personnel that reflect their "internal discussions" and "back-and-forth/give-and-take [that is] protected by the deliberative process privilege." Nw. Envtl. Advocates, 2009 WL 349732, at *7. Because the comments appear throughout the entirety of this brief document, they are not reasonably segregable. See Nat'l Wildlife Fed'n, 861 F.2d at 1119. Defendants may withhold this document from production.

### 4. December 17, 2013 RPAs (FWS 279): Not Protected

This document is also 4-page RPA that describes an alternative course of action by which the EPA could avoid adversely affecting protected species and habitats. It contains no subjective comments, recommendations, or opinions, and is a "relatively polished draft." Nw. Envtl. Advocates, 2009 WL 349732, at *7. Accordingly, it is not exempt from disclosure under the deliberative process privilege. See Greenpeace, 198 F.R.D. at 543.

### 5. December 18, 2013 FWS RPAs (FWS 308): **Not Protected**

This document is a 3-page RPA that describes an alternative course of action by which the EPA could avoid adversely affecting protected species and habitats. It contains no subjective comments, recommendations, or opinions, and is a "relatively polished draft." Nw. Envtl. Advocates, 2009 WL 349732, at *7. Accordingly, it is not exempt from disclosure under the deliberative process privilege. See Greenpeace, 198 F.R.D. at 543.

### 6. March 6, 2014 FWS RPAs (FWS 555): **Not Protected**

This document is a 2-page RPA that that describes an alternative course of action by which the EPA could avoid adversely affecting protected species and habitats. It contains no subjective comments, recommendations, or opinions, and is a "relatively polished draft." Nw. Envtl. Advocates, 2009 WL 349732, at *7. Accordingly, it is not exempt from disclosure under the deliberative process privilege. See Greenpeace, 198 F.R.D. at 543.

## B. Documents Lodged on June 27, 2017

As discussed in more detail below, of the ten documents that Defendants lodged for *in camera* review on June 27, 2017, three are protected, one is partially protected, and six are not protected and must be disclosed.

### 1. April 4, 2014 Draft Biological Opinion (NMFS 0.7.266.5427.1): **Not Protected**

This document is a 334-page draft jeopardy biological opinion. Like the December 6, 2013 Biological Opinion, it describes the EPA's proposed changes to Section 316(b) of the Clean Water Act, the new requirements for owner/operators of industrial cooling water intake structures, the location of affected structures, and the direct and indirect effects that the EPA's proposed action would have on protected species and their habitats. The document is a "relatively polished draft." Nw. Envtl Advocates, 2009 WL 349732, at *7. It contains no subjective comments, recommendations, or opinions,. Accordingly, it is not exempt from disclosure under the deliberative process privilege. See Greenpeace, 198 F.R.D. at 543.

### 2. October 21, 2013 Abalone Measures (NMFS 0.7.266.5597.1): <u>Not Protected</u>

This 2-page document describes steps that owner/operators must take if abalone, an endangered species, is affected by their cooling water intake structures. It contains no subjective comments, recommendations, or opinions, and is a "relatively polished draft." <u>Nw. Envtl. Advocates</u>, 2009 WL 349732, at *7. Accordingly, it is not exempt from disclosure under the deliberative process privilege. <u>See</u> <u>Greenpeace</u>, 198 F.R.D. at 543.

### 3. Anadromous Salmonid Measures (NMFS 0.7.266.7544.2): <u>Not Protected</u>

This 15-page document is entitled "Anadromous Salmonid Requirements." It provides criteria and guidelines to be utilized by owner/operators in the development of downstream migrant fish screen facilities for hydroelectric, irrigation, and other water withdrawal projects. The document includes sections on screen design and hydraulics, site conditions, structure placement, screen material, and debris management. It contains no subjective comments, recommendations, or opinions, and is a "relatively polished draft." <u>Nw. Envtl. Advocates</u>, 2009 WL 349732, at *7. Accordingly, it is not exempt from disclosure under the deliberative process privilege. <u>See</u> <u>Greenpeace</u>, 198 F.R.D. at 543.

### 4. Salmonids, Larval Fish, Sea Turtles, Abalone, and Corals Measures (NMFS 0.7.266.7544.3): <u>Protected</u>

This 3-page document lists the steps that owner/operators must follow if salmonids, larval fish, sea turtles, abalone, or corals may be affected by a cooling water intake structure. It is a preliminary draft with notes, comments, and highlighting that reflect "internal discussions" and "back-and-forth/give-and-take [that is] protected by the deliberative process privilege." <u>Nw. Envtl. Advocates</u>, 2009 WL 349732, at *7. Because the comments appear throughout the entirety of this brief document, it is not reasonably segregable. <u>See</u> <u>Nat'l Wildlife Fed'n</u>, 861 F.2d at 1119. Defendants may withhold this document from production.

### 5. Pinniped Measures (NMFS 0.7.266.37695): <u>Not Protected</u>

This 2-page document lists the steps that owner/operators must follow if a seal, sea lion, or fur seal, or their designated critical habitat, may be affected by a cooling water intake structure. It

contains no subjective comments, recommendations, or opinions, and is a "relatively polished draft." Nw. Envtl. Advocates, 2009 WL 349732, at *7. Accordingly, it is not exempt from disclosure under the deliberative process privilege. See Greenpeace, 198 F.R.D. at 543.

### 6. Sea Turtle Requirements (NMFS 0.7.266.45263.1): Protected

This 2-page document lists the steps that owner/operators must follow if sea turtles are affected by their cooling water intake structures. This document contains comments and additions that reflect "internal discussions" and "back-and-forth/give-and-take [that is] protected by the deliberative process privilege." Nw. Envtl. Advocates, 2009 WL 349732, at *7. Because the comments appear throughout the entirety of this brief document, it is not reasonably segregable. See Nat'l Wildlife Fed'n, 861 F.2d at 1119. Defendants may withhold this document from production.

### 7. Sea Turtle Requirements (NMFS 0.7.266.45277.2): Protected

This 2-page document is an exact duplicate of NMFS 0.7.266.45263.1, including all comments, modifications, and additions. For the reasons discussed above, this document is protected and need not be disclosed.

### 8. Sea Turtle Requirements (NMFS 0.7.266.37667): Not Protected

This 3-page document lists the steps that owner/operators must follow if sea turtles are affected by their cooling water intake structures. It contains no subjective comments, recommendations, or opinions, and is a "relatively polished draft." Nw. Envtl. Advocates, 2009 WL 349732, at *7. Accordingly, it is not exempt from disclosure under the deliberative process privilege. See Greenpeace, 198 F.R.D. at 543.

### 9. Table re Affected Species (NMFS 0.7.266.61721): Not Protected

This 1-page document contains a statistical chart showing estimated aggregate effects of cooling water intake structure facilities on protected species as a result of impingement and entrainment. It contains no subjective comments, recommendations, or opinions, and is a "relatively polished draft." Nw. Envtl. Advocates, 2009 WL 349732, at *7. Accordingly, it is not

exempt from disclosure under the deliberative process privilege.  See Greenpeace, 198 F.R.D. at 543.

### 10. Terms and Conditions (NMFS 0.7.266.14973.1): Partially Protected

This 5-page document lists the terms and conditions with which the EPA and an owner/operator must comply in order to be exempt from Section 9 of the ESA.  These terms and conditions involve the protocols for dealing with sea turtles near cooling water intake structures.  Although Defendant's cross-motion for summary judgment describes the document as "NMFS staff correspondence made in the course of deliberating about and preparing biological opinions," the document does not contain correspondence.  The only notation throughout the document is one sentence highlighted in yellow, which may reveal NMFS's personnel's decisionmaking process, and thus may be redacted.  See Nat'l Wildlife Fed'n, 861 F.2d at 1119.  The remainder of the document is not protected and should be disclosed.

## IV.  CONCLUSION

For the reasons set forth above, the cross-motions for summary judgment are GRANTED IN PART and DENIED IN PART.  Defendants shall produce the following documents in their entirety:  NMFS 0.7.266.44516.1; FWS 252; FWS 279; FWS 308; FWS 555; NMFS 0.7.266.5427.1; NMFS 0.7.266.5597.1; NMFS 0.7.266.7544.2; NMFS 0.7.266.37667; NMFS 0.7.266.37695; NMFS 0.7.266.61721.  Defendants shall redact the protected portions of the following document and produce the remainder:  NMFS 0.7.266.14973.1.  Defendants may withhold the following documents in their entirety:  NMFS 0.7.266.7544.3; NMFS 0.7.266.44616.1; NMFS 0.7.266.45263.1; NMFS 0.7.266.45277.2.  Defendants shall produce the required documents to Plaintiff within two weeks from the date of this order.

**IT IS SO ORDERED.**

Dated: July 24, 2017

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

11